UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DENNY DEJESUS,

                    Plaintiff,                    **DECISION AND ORDER**

          v.                                      6:16-CV-06470 EAW

CORRECTIONS OFFICER R. MALLOY
and C.O. JOHN DOE,[1]

                    Defendants.
_____

## I.    **INTRODUCTION**

Pending before the Court are competing motions for summary judgment related to an alleged sexual assault occurring on June 12, 2015, at the Five Points Correctional Facility ("Five Points C.F.").  (Dkt. 100; Dkt. 114).  For the reasons set forth below, the motion filed by defendant Corrections Officer R. Malloy ("Defendant") is denied (Dkt. 100), and the motion filed by *pro se* plaintiff Denny DeJesus ("Plaintiff") is granted in part and denied in part (Dkt. 114).

## II.   **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff commenced this lawsuit on July 6, 2016.  (Dkt. 1).  Plaintiff filed an amended complaint on October 18, 2016.  (Dkt. 8).  On February 23, 2017, the Court issued

_____

[1]      The docket continues to list C.O. John Doe as a defendant.  However, that reference was to the individual who has now been identified as defendant Corrections Officer R. Malloy.  (*See* footnote 2, *infra*).  Therefore, the Clerk of Court is directed to terminate C.O. John Doe as a defendant.

an Order denying Plaintiff's request to proceed *in forma pauperis* ("IFP") without prejudice.  (Dkt. 10).  Plaintiff filed an updated IFP application (Dkt. 11), and on May 8, 2018, the Court issued an Order granting Plaintiff's IFP application and screened the amended complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a), whereby all claims were dismissed with leave to replead except Plaintiff's Eighth Amendment claim for sexual assault against Defendant.[2]  (Dkt. 19).  On May 31, 2018, Plaintiff filed a second amended complaint.  (Dkt. 21).  On December 11, 2018, the Court screened the second amended complaint and allowed Plaintiff's claims against Defendant pursuant to the Eighth and Fourth Amendments to proceed but dismissed the remaining claims.  (Dkt. 35).  On April 11, 2019, Defendant filed an answer to the second amended complaint (Dkt. 46), and the Court referred the matter to Magistrate Judge Payson for the supervision of discovery (Dkt. 47).

Plaintiff alleges in the second amended complaint that on June 12, 2015, while he was housed at Five Points C.F., Defendant sexually assaulted him during a pat frisk while he was on his way to the law library.  (Dkt. 21 at 3).  Plaintiff alleges that Defendant placed his hand inside Plaintiff's pants and boxer shorts and squeezed his penis and testicles, causing Plaintiff "excruciating pain."  (*Id.*).  Defendant then allegedly said to Plaintiff "you

---

[2]     At the time of the initial screening, Defendant was identified as C.O. John Doe.  The Court directed the Attorney General's office to identify John Doe pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) (Dkt. 19 at 5-6), and that office initially responded with the identity of C.O. Gates, but Plaintiff contended that the individual in question was not C.O. Gates (*see* Dkt. 35 at 9-10).  The Court directed both Plaintiff and the Attorney General's office to provide additional information (*id.*; *see also* Dkt. 39 & Dkt. 40), and ultimately C.O. Malloy was identified as the corrections officer who pat frisked Plaintiff on the date in question (Dkt. 42 at 2).

like that freak." (*Id*.).  After the alleged sexual assault, Plaintiff states that he noticed that his penis and testicles had swollen and there was blood in his urine and a stinging sensation when he urinated.  (*Id*.).  Plaintiff subsequently received medical treatment.  (*Id*. at 5-9).

Defendant's Motion for Summary Judgment

On July 6, 2020, Defendant filed a motion for summary judgment.  (Dkt. 100).  Defendant seeks dismissal of "the cause of action for physical assault."  (*Id*. at 1).  In support of the motion, Defendant submitted a statement of undisputed facts addressing Plaintiff's medical situation after the alleged incident, wherein tests revealed microscopic amounts of blood in Plaintiff's urine on June 14, 2015, but there were no reports in the medical records of any bleeding, bruising or redness to Plaintiff's penis or testicles.  (Dkt. 100-1 at ¶¶ 4-5).  Trace amounts of blood were also found in Plaintiff's urine on June 15 (Dkt. 100-3 at ¶ 8), but by June 18, there was no presence of blood.  (*Id*. at ¶¶ 7 & 9).  In addition, a testicular sonagram was performed on June 30, and it found no abnormality, inflammation, or signs of trauma.  (*Id*. at ¶ 10).  Defendant states that based on the opinion of David Dinello, M.D., "[t]here is no biological mechanism explaining how blunt force trauma could cause a microscopic hematuria which resolved in a couple of days and showed no scarring or signs of abnormality on a sonogram of Plaintiff's testicles."  (*Id*. at ¶ 11; *see also* Dkt. 100-3 at 4-6).  David Dinello, M.D.,[3] has submitted a declaration opining that the blood in Plaintiff's urine was not caused by trauma to the testicles or groin.  (*Id*. at

---

[3]   Dr. Dinello is employed by the Department of Corrections and Community Supervision ("DOCCS") as a physician at Five Points C.F. and he describes himself as Plaintiff's treating physician during the relevant time period.  (Dkt. 100-3 at 4, ¶¶ 1-4).

6, ¶¶ 17-18).  Dr. Dinello states that the amount of blood in Plaintiff's urine on or about June 14, 2015, would not have been visible to the naked eye.  (*Id*. at 4, ¶ 7).  Included as part of Defendant's summary judgment motion is a certified copy of Plaintiff's medical records (*id*. at 8-51), and three pages of Plaintiff's deposition transcript (*id*. at 52-55).

Defendant seems to bifurcate Plaintiff's Eighth Amendment claim, characterizing it as a claim for "physical and sexual assault" and contends that he is seeking summary judgment on the "physical assault" aspect of the claim only.  (Dkt. 100-4 at 2).  Defendant contends that it is impossible for the incident as described by Plaintiff to have occurred and not have resulted in more significant physical injuries, and that Plaintiff should not be permitted to testify that the alleged incident caused blood in the urine without expert testimony.[4]  (*Id*. at 3-4).  If summary judgment is not granted, Defendant alternatively requests that Plaintiff be barred "from entering evidence or testifying about blood in his urine as it is an impossibility for his microscopic hematuria to have been caused by a blunt force trauma, from Defendant or anyone else."  (*Id*. at 5).

Plaintiff has opposed Defendant's motion.  (Dkt. 102).  In opposition to the motion, Plaintiff has submitted a response to Defendant's statement of undisputed facts wherein he contends that by the time he was seen by medical personnel after the incident, his penis' swelling had reduced but his testicles were still swollen.  (Dkt. 102-1 at 2).  Plaintiff also contends that if the blood in his urine was only microscopic as claimed by the defense, then

---

[4]     Plaintiff made a motion for the Court to appoint an expert witness and that motion was denied by Judge Payson without prejudice.  (Dkt. 109).

he would not have been able to observe the urine and report it, as he did after the incident. (*Id*. at 10).[5]  Plaintiff contends that the ambulatory health record progress note from June 18, 2015, supports his contention about swelling in his groin area (*id*. at 2; *see id*. at 62-63), as does the record from June 15, 2015 (*id*. at 2, 58-61).[6]  Plaintiff further contests the conclusiveness of the sonogram of his testicles, as no such study was performed on his penis.  (*Id*. at 4-5).  Plaintiff also submits a declaration wherein he outlines the medical treatment that he received after the incident, and his observations of blood in his urine, a stinging sensation when urinating, and swollen testicles and penis.  (*Id*. at 76-83).  In addition, Plaintiff submits portions of his deposition testimony (*id*. at 31-55), and the sick-call slip dated June 12, 2015 (*id*. at 56-57; *see id.* at 78, ¶ 4).  Plaintiff states in his affidavit that he first received medical attention for the incident on June 14, 2015, after making a request for the same on the date of the incident.  (*Id*. at 78-79, ¶¶ 4-6).  This is consistent with the medical records which indicate Plaintiff was first seen on June 14, 2015, at 1:30 a.m.  (Dkt. 100-3 at 19).

---

[5]    A record Plaintiff attached to his motion for summary judgment supports the conclusion that Plaintiff reported seeing blood in his urine prior to any tests revealing microscopic levels of blood.  (*See* Dkt. 114-2 at 9 (memo from Sgt. Atwood to Superintendent Colvin dated June 14, 2015, reporting that Plaintiff observed blood in his urine on June 13, 2015)).  However, as noted in footnote 9, *infra*, this record has not been properly authenticated and thus, the Court does not consider it on this motion for summary judgment.

[6]    The record from June 15, 2015, includes the following notes: "no redness/swelling of testicles noted"; "no lesions/redness"; "urethral measures WNL"; "no blood/discharge"; and "genital exam unremarkable."  (Dkt. 102-1 at 60-61).  It is not clear how Plaintiff believes this record supports his claim that there was swelling in his groin area.

Defendant filed reply papers in further support of his motion for summary judgment, consisting of a further declaration from Dr. Dinello with attached medical records. (Dkt. 103). In that reply declaration, Dr. Dinello states that the ambulatory health record progress note from June 18, 2015, only supports a conclusion that Plaintiff told medical personnel that a medical provider who examined him on June 15, 2015, found swelling—not that there was objective evidence of the swelling. (*Id*. at ¶ 8). Dr. Dinello states that "[t]he note is clear" in this regard and that it supports a conclusion that on June 18, 2015, Plaintiff "lied to medical staff and falsely claimed that on June 15 he had been assessed with redness and swelling."[7] (*Id*. at ¶¶ 8 & 10). Dr. Dinello further opines that the medical evidence does not support a conclusion that Plaintiff suffered blunt force trauma to his penis that caused blood in his urine. (*Id*. at ¶¶ 12-17).

<u>Plaintiff's Motion for Summary Judgment</u>

On December 30, 2020, Plaintiff filed a motion for summary judgment. (Dkt. 114). The motion seeks summary judgment in favor of Plaintiff on his Eighth Amendment claim involving the alleged sexual assault on June 12, 2015. (Dkt. 114 at 8). In support of that motion, Plaintiff submitted a statement of undisputed facts (*id*. at 3-6), a memorandum of

---

[7]     The Court does not agree with Dr. Dinello's view as to the clarity of this note. The statement "found to have swelling" is contained in the "assessment" portion of the note, and Dr. Dinello does not claim to be the author of the note. Moreover, as Plaintiff points out (*see* Dkt. 108 at 1-2), there appears to be a period in the note separating the comments about what Plaintiff reported and what the medical provider found during an examination on June 15, 2015. In other words, the note actually appears to read: "States he was inappropriately pat frisked on 6/11/15. Was evaluated 6/15/15 for this claimed incident by a provider—found to have swelling." (*See* Dkt. 100-3 at 17).

law (*id*. at 7-16), Plaintiff's declaration made under penalty of perjury (Dkt. 114-1 at 10-12), and exhibits consisting of documents related to the grievance filed by Plaintiff (*id*. at 1-8), a videotape of the incident (*id*. at 13)[8], the sick-call note from June 12, 2015, whereby Plaintiff requested medical attention (*id*. at 14-15), portions of Plaintiff's deposition transcript (Dkt. 114-2 at 1-7), and various other documents related to the incident.[9]

Defendant's opposition to Plaintiff's motion for summary judgment consists of a three-page memorandum of law.  (Dkt. 117).  Although Defendant's opposition appears to incorporate the evidence submitted in support of his motion for summary judgment, Defendant did not directly submit any evidentiary proof in opposition to Plaintiff's motion, nor did he respond to Plaintiff's statement of undisputed facts.

Plaintiff filed a reply memorandum in further support of his motion for summary judgment wherein, among other things, he argues that Defendant failed to provide an affidavit or evidentiary proof in opposition to the motion for summary judgment, thus justifying granting Plaintiff's motion.  (Dkt. 118).

---

[8]     This is the videotape referenced in footnote 2, *supra*.  The videotape is part of the Court's file in this case, and the undersigned has reviewed it again in connection with the pending motions.

[9]     These other documents consist of medical records and certain internal DOCCS records.  (*See* Dkt. 114-2 at 8-44).  Plaintiff is not a proper record custodian so as to authenticate these records.  *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 123 (2d Cir. 2001) ("It is appropriate for a district court ruling on summary judgment to consider only admissible evidence.").  A certified copy of the medical records was submitted with Defendant's motion for summary judgment, and arguably can be considered by the Court in evaluating Plaintiff's summary judgment motion since Defendant appears to incorporate them into his opposition memorandum.  However, the other internal DOCCS records attached to Plaintiff's motion will not be considered by the Court.

III.   **DISCUSSION AND ANALYSIS**

    A.   Summary Judgment Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could find in favor of that party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ."  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014).  "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial."  *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."  *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)).  Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown*, 654

F.3d at 358. Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Moreover, even when both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party. Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

In addition, "[i]t is well-settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (internal quotations and citation omitted); *see also Hemphill v. New York*, 380 F.3d 680, 687 (2d Cir. 2004) ("It is well-established that 'when [a] plaintiff proceeds *pro se* . . . a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.'" (alteration in original) (internal citation omitted)), *overruled on other grounds by Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850 (2016). Moreover, "a *pro se* litigant should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984).

This District's Local Rule of Civil Procedure 56(a) requires the submission of a statement of undisputed facts in support of a summary judgment motion, and requires the opposing party to provide a response. Pursuant to Local Rule of Civil Procedure 56(a)(2),

"[e]ach numbered paragraph in the moving party's statement of material facts may be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement."  Although a district court should not deem unopposed facts to be admitted when those facts are unsupported by the record, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73-74 (2d Cir. 2001), a district court has discretion to deem facts admitted for lack of compliance with its local rules, *see N.Y. State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005) (it was within district court's discretion to deem the moving party's statement of material facts admitted where the opposing party "offered mostly conclusory denials" and "failed to include any record citations" contrary to the district's local rules); *Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998) (because plaintiff failed to respond to defendant's statement of material facts submitted in accordance with local rules, "the material facts contained in his statement are deemed to be admitted as a matter of law").

B.    Eighth Amendment Legal Standard

There are two elements to a prisoner's claim that his Eighth Amendment right to be free from cruel and unusual punishment was violated: "First, the prisoner must allege that the defendant acted with a subjectively sufficiently culpable state of mind."  *Harris v. Miller*, 818 F.3d 49, 63 (2d Cir. 2016) (internal quotations and citations omitted).  "Second, [the inmate] must allege that the conduct was objectively harmful enough or sufficiently serious to reach constitutional dimensions."  *Id.* at 64 (internal quotations and citations omitted).

In order to satisfy the subjective component of an Eighth Amendment claim, the prisoner must show that the defendant corrections officer "had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct." *Id*. at 63 (internal quotations and citations omitted). "For excessive force claims, as contrasted with other actions or inactions that rise to the level of Eighth Amendment violations, the test for wantonness 'is whether the force was used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id*. at 63 (quoting *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003)). Several factors must be considered by a court in this context to determine whether a defendant acted maliciously or wantonly: "the extent of the injury and the mental state of the defendant, as well as 'the need for the application of force; the correlation between the need and the amount of force used; the threat reasonably perceived by the defendant[]; and any efforts made by the defendant[] to temper the severity of a forceful response.'" *Id*. (citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." *Scott*, 344 F.3d at 291 (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). In addition, the subjective prong may be satisfied by claims of sexual abuse. "Where no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997); *see also Delee v. Hannigan*, 729 F. App'x 25, 30 (2d Cir. 2018) ("True, intent may be inferred from statements made by a corrections officer; from the use of demeaning sexualized remarks; from the timing of an assault; or from a

lack of any 'legitimate law enforcement or penological purpose for the defendant's alleged conduct.'" (internal citations omitted)).

As to the objective prong, it is "context specific, turning upon contemporary standards of decency." *Harris*, 818 F.3d at 64 (quotations and citations omitted); *see Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015) ("Although not 'every malevolent touch by a prison guard gives rise to a federal cause of action,' the Eighth Amendment is offended by conduct that is 'repugnant to the conscience of mankind.'  Actions are repugnant to the conscience of mankind if they are 'incompatible with evolving standards of decency' or involve 'the unnecessary and wanton infliction of pain.'" (citations omitted)).  In the excessive force context, the malicious use of force to cause harm will constitute an Eighth Amendment violation *per se* "because when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." *Harris*, 818 F.3d at 64 (quotations and citations omitted).  In *Crawford*, the Second Circuit Court of Appeals clarified the rule for sexual assaults set forth in *Boddie*, holding: "A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or to humiliate the inmate, violates the Eighth Amendment."  796 F.3d at 257.  "In determining whether an Eighth Amendment violation has occurred, the principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate."  *Id*. at

257-58.  "[A] single act of sexual abuse may violate the Eighth Amendment if . . . it is entirely gratuitous and devoid of penological purpose."  *Id*. at 256.

C.     Defendant's Motion for Summary Judgment

The Court turns first to Defendant's motion for summary judgment which, by his own admission, only seeks judgment in his favor on the "physical assault" aspect of Plaintiff's claim.  (Dkt. 100-4 at 2).  The Court interprets this as Defendant suggesting that Plaintiff has asserted a claim for both excessive use of force in violation of the Eighth Amendment, and sexual assault in violation of the Eighth Amendment, based on the same pat frisk.  The Court is not convinced that this accurately portrays Plaintiff's claims, which are not divided in that manner in the second amended complaint (Dkt. 21), nor were they interpreted in that manner by the Court in its screening of the second amended complaint (Dkt. 35).

Rule 56(a) permits a party to move for summary judgment on part of a claim.  *See Miller v. Terrillion*, 436 F. Supp. 3d 598, 600 (E.D.N.Y. 2020) ("A party may move for summary judgment only as to part of a claim."); *Travelers Indem. Co. v. Northrup Grumman Corp.*, 416 F. Supp. 3d 290, 297 (S.D.N.Y. 2019) ("The rule permits motions on particular issues, rather than entire claims. . . ."), *on reconsideration in part*, No. 16 CIV. 8778 (LGS), 2020 WL 1469550 (S.D.N.Y. Mar. 26, 2020); *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 361 F. Supp. 3d 324, 334 (E.D.N.Y. 2019) ("Finally, it bears noting that '[s]ummary judgment is not an all-or nothing proposition.'  A party may move pursuant to Rule 56(a) for summary judgment as to an entire claim or defense, as well as 'part of a claim or defense.'" (citations omitted)).  In addition, Rule 56(g) gives a district

court discretion if it "does not grant all the relief requested by the motion" to "enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case." *See D'Iorio v. Winebow, Inc.*, 68 F. Supp. 3d 334, 356 (E.D.N.Y. 2014) (explaining that the purpose of Rule 56(g) "is twofold: to salvage some of the judicial effort involved in the denial of a motion for summary judgment and to streamline the litigation process by narrowing the triable issues" (citations and quotations omitted)); *see also Coene v. 3M Co. ex rel. Minnesota Min. & Mfg. Co.*, No. 10-CV-6546-FPG, 2015 WL 5773578, at *6 (W.D.N.Y. Sept. 30, 2015) ("The Advisory Committee has offered the following note on Rule 56(g): 'Even if the court believes that a fact is not genuinely in dispute it may refrain from ordering that the fact be treated as established. The court may conclude that it is better to leave open for trial facts and issues that may be better illuminated by the trial of related facts that must be tried in any event.'"). Thus, the Court will consider the merits of Defendant's motion addressed to the "physical assault" aspect of Plaintiff's claim.

It is true that most of the medical records[10] submitted by Defendant, along with Dr. Dinello's declarations, support the conclusion that the pat frisk did not involve blunt force trauma to Plaintiff's groin area or result in any injuries. However, it is also true that Plaintiff was not seen by medical personnel until June 14, 2015, for this incident purportedly occurring on June 12, 2015. And Plaintiff has submitted a sworn declaration

---

[10] The Court indicates that "most" of the medical records support this conclusion because, as outlined in footnote 7, *supra*, the note from June 18, 2015, is not clear about whether medical personnel acknowledged swelling.

that he observed blood in his urine after the incident, prompting him to request medical attention, and that he also experienced a stinging sensation when urinating and swollen testicles and penis, with the swelling reduced to some degree by the time he was seen by medical personnel.   Moreover, there is no dispute that the medical tests revealed microscopic amounts of blood in Plaintiff's urine on June 14, 2015, which then resolved a few days later—at least suggesting that the level of blood in Plaintiff's urine diminished over the course of time (and thus, could have been more significant on the date of the alleged incident).

An excessive force claim under the Eighth Amendment does not require that the victim "suffer serious, or significant injury, as long as the amount of force used is not *de minimis*." *Harris*, 818 F.3d at 64.   Here, considering the evidence on Defendant's motion for summary judgment in the light most favorable to Plaintiff, the Court concludes that Plaintiff has submitted sufficient evidence to raise an issue of fact as to the extent of force directed toward his groin area during the pat frisk.   *See Bellamy v. City of New York*, 914 F.3d 727, 746 (2d Cir. 2019) ("Contrary to the district court's analysis, a § 1983 plaintiff's testimony alone may be independently sufficient to raise a genuine issue of material fact."); *Wright v. Goord*, 554 F.3d 255, 269 (2d Cir. 2009) (Eighth Amendment claims have proceeded to trial "even where the plaintiff's injury was slight and the proof of excessive force was weak." (collecting cases)); *Scott*, 344 F.3d at 289 (although the plaintiff's medical records "do not indicate that he suffered as much harm as his affidavit suggests, the records standing alone are inconclusive" and where the plaintiff submitted an affidavit describing the extent of his injuries, those "sworn statements are more than mere

conclusory allegations subject to disregard; they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion"); *LaPorte v. Fisher*, No. 11-CV-9458 PKC HBP, 2014 WL 2924992, at *8 (S.D.N.Y. June 27, 2014) (even where the plaintiff's testimony was largely unsubstantiated by the medical record, his testimony was given under penalty of perjury and corroborated by other witness statements, and this was sufficient to create an issue of fact to defeat a summary judgment motion); *Smith v. Fields*, No. 95-cv-8374 (DAB), 2002 WL 342620, at *6 (S.D.N.Y. Mar. 4, 2002) ("Although the apparent lack of any indication in the medical records suggesting that Plaintiff was in fact slapped and kicked about the head casts some doubt on his claim, it is for the fact finder to determine the veracity of the Plaintiff's account and whether his allegations, even if standing alone, amount to excessive force."). As cautioned by the Second Circuit in *Scott*: "By finding against [the plaintiff] on the basis of the disparity between some of [his] medical records and statements in his affidavit, the district court made an impermissible credibility determination and weighed contradictory proof. The credibility of [the plaintiff's] statements and the weight of contradictory evidence may only be evaluated by a finder of fact." 344 F.3d at 289-90.

With respect to Defendant's alternative request that the Court preclude Plaintiff from testifying about blood in his urine, "[t]his is not a motion *in limine*; it is a motion for summary judgment." *Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 404 (E.D.N.Y. 2011) (concluding that "the jury will be required to determine whether excessive force was used to effectuate the arrest in the whole context in which it happened; it will not be asked to slice it into individual pieces to determine whether any of those pieces standing alone

constituted excessive force"). Particularly where Plaintiff's prior request to have an expert appointed was denied without prejudice, the Court finds it inappropriate to deal with Defendant's request in this regard in the context of this motion. Rather, any requests in that regard may be renewed as part of a motion *in limine* prior to trial.

D.    Plaintiff's Motion for Summary Judgment

In support of his motion for summary judgment, Plaintiff submits a statement of undisputed facts, stating that on June 12, 2015, during a pat frisk, Defendant "placed his left hand in plaintiff[']s pants grabing [sic] and squeezing plaintiff[']s penis and testicals [sic] while pulling which caused the plaintiff to feel escruciating [sic] pain to the penis and testicals [sic]." (Dkt. 114 at 3-4, ¶ 2). In support of that statement, Plaintiff relies upon, among other things, his declaration. (*See* Dkt. 114-1 at 10, ¶ 1 ("On my way to law library on 6-12-2015 at approx. 1:01 pm, I walked threw [sic] a metal detector to continue to law library, in which I was stoped [sic] by the Defendant, once on the wall, the Defendant started to pat-frisk me, once he got to my mid section, he placed his left hand in the front of my pants and grabed [sic] and squeezed my testicals [sic] to the point of pain for approx. 8 seconds."); *see also* Dkt. 114-2 at 4-5 (Plaintiff's deposition testimony wherein he describes Defendant putting his left hand inside Plaintiff's pants and boxers, grabbing Plaintiff's penis and testicles, and squeezing and pulling on his genitalia multiple times)). Plaintiff further states that Defendant "stated to plaintiff while sexually assaulting him 'you like that freak,'" citing to his declaration (*id.* at 2, ¶ 1) and his sworn deposition testimony (Dkt. 114-2 at 4) (*See* Dkt. 114 at 4, ¶ 3). Plaintiff goes on to state that he put in a sick-call request that day, citing to the sick-call note dated June 12, 2015 (Dkt. 114-1 at 14-15),

and his sworn deposition testimony (Dkt. 114-2 at 6), and that he first was seen by medical personnel on June 14, 2015 (*see* Dkt. 114 at 4-5, ¶¶ 5, 8).   Plaintiff submits both his statement of undisputed facts and his declaration under penalty of perjury, swearing that the statements contained therein are true and correct.   (*Id*. at 6; Dkt. 114-1 at 12).   *See LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65-66 (2d Cir. 1999) (28 U.S.C. § 1746 requires substantial compliance with its requirements, and letter that did not contain exact language of section but stated "[u]nder penalty of perjury, I make the statements contained herein" was sufficient).

As noted above, Defendant responded with only a three-page memorandum of law. In his memorandum of law, Defendant states:

> Defendant expressly denies Plaintiff's statement of 'uncontested' facts. Strictly speaking, (and, in light of the prior paragraph, somewhat ironically), Plaintiff phrases several of his uncontested facts as 'Plaintiff states. . .' (D.N. 114 p.3).   Defendant does not deny that Plaintiff has stated that an assault occurred but denies the veracity of content of each of his statements of uncontested facts alleging an assault occurred.

(Dkt. 117 at 2-3).   But this attempt to raise disputed issues of fact in a memorandum of law is wholly insufficient.   First, it blatantly disregards Local Rule 56(a)(2)'s requirement that Defendant respond to Plaintiff's statement of undisputed facts by corresponding paragraph number in an opposing statement.   Second, even if the Court was willing to disregard Defendant's lack of compliance with the Local Rule—it is not—Defendant "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358.   Defendant has failed to do so.

Defendant appears to incorporate his own motion for summary judgment in opposition to Plaintiff's motion, relying on the medical records and Dr. Dinello's opinion. (Dkt. 117 at 2). However, as noted above, Defendant's motion was not addressed to whether a sexual assault occurred, but rather whether a physical assault occurred. In other words, Defendant's motion dealt with the amount of force used during the alleged touching of Plaintiff's penis and testicles, and whether the blood in Plaintiff's urine could have been caused by blunt force trauma. Thus, construing the evidence presented in Defendant's motion for summary judgment in the light most favorable to Defendant on Plaintiff's motion for summary judgment, that evidence establishes that a physical assault resulting in injuries did not occur on the date in question. It does not refute Plaintiff's evidence that on the date in question, Defendant reached inside Plaintiff's pants, grabbed and squeezed his penis and testicles for approximately 8-10 seconds, and said "you like that freak."

The Court has also reviewed the surveillance footage from Five Points C.F. (*see* Dkt. 114-1 at 13), and while the Court questions whether the video is of sufficient quality to show Defendant grabbing Plaintiff's penis and testicles (as claimed by Plaintiff (*see* Dkt. 114 at 13-14)), it does show that at approximately 1:00:50 p.m., an individual matching Plaintiff's description entered the metal detector. At approximately 1:01:15 p.m., that individual is placed on the wall for a pat frisk, which lasts until approximately 1:02:15 p.m. In other words, the video evidence certainly supports the conclusion that the pat frisk occurred on the date and time in question. The video evidence also depicts other inmates being subjected to pat frisks by other corrections officers, and none of those other pat frisks appear to involve an officer reaching inside an inmate's pants to squeeze his genitalia.

- 19 -

To the extent Defendant attempts to attack Plaintiff's credibility because he purportedly "waited a significant period of time . . . before seeking medical attention," (Dkt. 117 at 1), this is simply not supported by the record which suggests that Plaintiff submitted a sick-call request on the date of the incident (Dkt. 114-1 at 15), but was not seen by medical personnel until June 14, 2015.

Defendant also claims in his memorandum of law that "Plaintiff's own pleading provides documents indicating no assault occurred," and he cites to an internal DOCCS document concerning Plaintiff's grievance that was attached to Plaintiff's motion papers. (Dkt. 117 at 1; *see* Dkt. 114-1 at 8).  First, as noted in footnote 9, *supra*, this document has not been properly authenticated.  Second, the document is plainly hearsay and the foundation for its admission as an exception to the hearsay rules has not been set forth in this record.  *Cf. Hill v. Cty. of Montgomery*, No. 9:14-CV-00933 BKS DJS, 2020 WL 819225, at *1 (N.D.N.Y. Feb. 19, 2020) (finding that inmate grievances were not admissible as business records under Federal Rule of Evidence 803(6)); *Kokoska v. City of Hartford*, No. 3:12-CV-01111 WIG, 2014 WL 4724875, at *3 (D. Conn. Sept. 23, 2014) ("Recognizing the potential for self-serving statements by officers involved in excessive force incidents, courts in this circuit have generally found that their incident reports were inadmissible under Rule 803(6) because of the lack of indicia of reliability."); *Lewis v. Velez*, 149 F.R.D. 474, 489 (S.D.N.Y. 1993) (proffered records and reports concerning the incident, including investigatory report, not admissible in excessive use of force trial). Third, even if considered, this document proves nothing—it simply states that Plaintiff could not identify the officer who engaged in the conduct and Plaintiff's allegations

- 20 -

remained unsubstantiated, but the matter was being investigated by the Office of Special Investigations.

Put simply, there is no evidence in the record refuting Plaintiff's version of events that he was sexually assaulted. Defendant opted not to submit his own sworn testimony either in support of his summary judgment motion or in opposition to Plaintiff's motion.[11] Thus, based on the record before the Court, the undisputed facts establish that on June 12, 2015, at Five Points C.F., at approximately 1:01 p.m., as Plaintiff was on his way to the law library, Defendant conducted a pat frisk of Plaintiff during which he reached inside Plaintiff's pants and boxers, so that he was able to grab, pull, and squeeze Plaintiff's penis and testicles for approximately 8-10 seconds, causing Plaintiff pain. The undisputed facts further establish that while doing this, Defendant said to Plaintiff, "you like that freak."

Under the legal standards set forth above, the Court concludes that these undisputed facts satisfy both the objective and subjective elements of Plaintiff's Eighth Amendment sexual assault claim. Considering the evidence in the light most favorable to Defendant, no rational jury could conclude that there was a penological purpose associated with Defendant reaching inside Plaintiff's pants, grabbing and squeezing his genitalia, causing

---

[11] The Court notes that, while not referred to or relied upon by Defendant in connection with either of the pending summary judgment motions, the docket contains two documents purporting to be interrogatory responses from Defendant. (Dkt. 75; Dkt. 90). However, these interrogatory responses are not sworn to as required by Federal Rule of Civil Procedure 33(b)(3), and as such, even if the Court was to go outside the evidence submitted in connection with the pending summary judgment motions, see Fed. R. Civ. P. 56(c)(3) ("The court *need* consider only the cited materials, but it *may* consider other materials in the record." (emphasis added)), these interrogatory responses do not constitute admissible evidence in the record before the Court.

Plaintiff pain, and stating "you like that freak" as he performed a pat frisk. It would be a different situation if, for instance, Defendant had searched Plaintiff's groin area outside his pants. *Cf. Shaw v. Prindle*, 661 F. App'x 16, 19 (2d Cir. 2016) (affirming grant of summary judgment in favor of defendant where pat frisk search conducted outside the plaintiff's clothing "took longer than it was supposed to" and included "excessive searching of [the plaintiff's] 'crotch area and . . . in between [his] buttocks' and massaging of his 'rectum and groin area,'" because there was no evidence from which the court could reasonably infer that the defendant had intended to search the plaintiff with intent to arouse or gratify his sexual desires or to humiliate the plaintiff). But that is not what occurred here. And the search described by Plaintiff is different than what occurred with the pat frisks of other inmates more clearly reflected in the video evidence.

As to the subjective prong of the test, Defendant's intent "has to be inferred rather than observed; judges and jurors are not mind readers." *Harris*, 818 F.3d at 64 (quoting *Washington v. Hively*, 695 F.3d 641, 643-44 (7th Cir. 2012)). Defendant's "demeaning comments" where he referred to Plaintiff as a freak as he was grabbing his genitalia inside his pants with no penological purpose "suggest that [he] . . . undertook the search in order to arouse himself, humiliate [Plaintiff] . . ., or both." *Crawford*, 796 F.3d at 259; *see Hayes v. Dahlke*, 976 F.3d 259, 275 (2d Cir. 2020) ("As a general matter, pat frisks 'relate to the safety and security of the facility by ensuring that inmates do not possess contraband, and prison directives make clear that pat frisks necessarily entail contact with the genitalia and buttocks, where inmates have been known to conceal drugs and weapons such as razor blades. But the routine nature of these pat frisks alone does not shield an officer from

liability, and the conduct described by [the plaintiff], if believed, could certainly support an inference that [the defendant] engaged in conduct beyond what was required for a pat search in order to 'gratify [his] sexual desire' or 'humiliate' [the plaintiff].").   In other words, the evidence presented by Plaintiff supports the conclusion that Defendant engaged in this behavior to humiliate Plaintiff and cause him pain, and Defendant has come forward with no evidence from which a jury could conclude to the contrary.   While it may not be "entirely outside the realm of possibility" that Defendant had some other, unidentified intent in reaching inside Plaintiff's pants and painfully grabbing his genitalia, "those inferences . . . are too speculative and unsubstantiated to defeat summary judgment." *Comolli v. Huntington Learning Centers, Inc.*, 683 F. App'x 27, 30 (2d Cir. 2017) (finding no genuine issue of fact as to parties' intent to execute certain releases, because "the version of events that [those parties] contend a reasonable jury could have credited" was based on "conjecture").   As a result, the Court concludes that no rational jury could find that Defendant did not act with a sufficiently culpable state of mind.

As to the objective prong, the *Crawford* court set forth the standard: "A corrections officer's intentional contact with an inmate's genitalia or other inmate area, which serves no penological purpose and is undertaken to gratify the officer's sexual desire or to humiliate the inmate, violates the Eighth Amendment."   796 F.3d at 257.   Moreover, a single act of sexual abuse is sufficient to constitute an Eighth Amendment violation if "it is entirely gratuitous and devoid of penological purpose."   *Id.* at 256.   The undisputed facts in the record establish that Defendant intentionally reached inside Plaintiff's pants and grabbed, squeezed and pulled his genitalia for no penological purpose.   Moreover,

Defendant's conduct and words support the conclusion that he did this so as to humiliate Plaintiff and inflict harm.  *See Shepherd v. Fischer*, No. 08-CV-9297 (RA), 2018 WL 3122053, at *4 (S.D.N.Y. June 26, 2018) ("When evaluating the objective prong, courts holistically consider the nature of a defendant's conduct—they do not divorce the physical and verbal components of the conduct.").  The Court recognizes that the evidence submitted by Defendant in support of his own summary judgment motion raises questions as to the extent of the force used by Defendant and any injuries suffered by Plaintiff.  But even if Plaintiff was not injured, that does not impact the conclusion that Defendant intentionally grabbed, squeezed and pulled Plaintiff's genitalia for no penological purpose and to humiliate Plaintiff and inflict harm.  Based on the standard set forth by *Crawford*, no reasonable jury could find in favor of Defendant on the objective prong.

The Court notes that qualified immunity was raised by Defendant as an affirmative defense in his answer.  (Dkt. 46 at 2-3).  Qualified immunity "will shield [an] officer from liability for damages if his 'conduct d[id] not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Outlaw v. City of Hartford*, 884 F.3d 351, 366 (2d Cir. 2018) (quoting *Mullenix v. Luna*, 577 U.S. 7 (2015)).  "The qualified immunity standard is an objective standard, asking not whether the defendant officer acted in good faith or what he himself knew or believed, but rather what would have been known to or believed by a reasonable officer in the defendant's position."  *Id*. at 367.  "Qualified immunity is an affirmative defense on which the defendant has the burden of proof."  *Id*.  At the summary judgment stage, a defendant bears the "burden of showing that the challenged act was objectively reasonable in light of the law existing at

that time." *Vasquez v. Maloney*, No. 20-1070-CV, ___ F.3d ___, 2021 WL 826214, at *3 (2d Cir. Mar. 4, 2021) (citations omitted).

Here, the incident in question occurred shortly before the Second Circuit's decision in *Crawford*. Under the circumstances, Defendant could have argued that the unlawfulness of his conduct was not clearly established at the time he engaged in it. *See Shannon v. Venettozzi*, 749 F. App'x 10, 13 (2d Cir. 2018) (affirming grant of qualified immunity based on sexual abuse occurring in 2011: "Although the conduct alleged in the amended complaint is reprehensible both then and now, when it occurred in 2011, our precedent did not establish that such conduct was clearly unconstitutional."); *Crawford v. Cuomo*, 721 F. App'x 57, 59 (2d Cir. 2018) (affirming grant of qualified immunity based on sexual abuse occurring in 2011, because "[a] reasonable officer could thereafter have believed that the sexual abuse here alleged, even if it might violate state criminal law or subject him to tort liability, did not violate the Eighth Amendment").

But Defendant never addressed this issue in his opposition to Plaintiff's summary judgment motion. "[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *Jones v. Pawar Bros. Corp.*, 434 F. Supp. 3d 14, 20 (E.D.N.Y. 2020) (quoting *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014)). Defendant's failure to address the issue of qualified immunity is particularly inexcusable in view of the fact that Plaintiff raised the issue of qualified immunity in his moving papers. (*See* Dkt. 114 at 14-15). Under the circumstances, the Court deems Defendant's defense of qualified immunity abandoned and so it does not prevent the grant of summary judgment in

Plaintiff's favor.  *See Crotona 1967 Corp. v. Vidu Bros. Corp.*, 925 F. Supp. 2d 298, 308 (E.D.N.Y. 2013) (where defendant failed to raise affirmative defenses set forth in answer in opposition to summary judgment motion, court would not consider affirmative defenses); *Maxim Grp. LLC v. Life Partners Holdings, Inc.*, 690 F. Supp. 2d 293, 310 (S.D.N.Y. 2010) (where defendant failed to brief affirmative defenses in opposition to plaintiff's summary judgment motion, affirmative defenses deemed abandoned).

Therefore, Plaintiff is entitled to summary judgment in his favor on liability with respect to his Eighth Amendment claim for sexual assault.  The Court cannot, however, determine damages based on the current record, and in fact, there are disputed issues of fact as to the extent of any injuries suffered by Plaintiff.  That issue will need to be resolved by a jury.

## IV.  **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is denied (Dkt. 100) and Plaintiff's motion is granted in part and denied in part (Dkt. 114).

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated:       March 31, 2021
             Rochester, New York